

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-0876-13

**DANA HANNA, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## LUBBOCK COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, HERVEY and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEASLER, J., joined. WOMACK, J., concurred.

O P I N I O N

Appellant pled guilty to driving while intoxicated. The trial judge accepted his plea and ordered him to pay $7,767.88 in restitution to Lubbock Power and Light (LP&L) for repairing a utility pole that appellant's car had struck. Appellant appealed, arguing that

Article 42.037[1] of the Code of Criminal Procedure does not authorize restitution because LP&L was not a "victim" of the offense for which he was convicted. The court of appeals agreed, holding that the restitution order was improper because (1) driving while intoxicated is a victimless crime because it "does not encompass per se a particular category of complainant," and (2) there was no victim alleged in the charging instrument.[2] We granted review[3] and conclude that restitution (1) may be ordered in a DWI case, and (2) may be ordered for someone whose name did not appear in the charging instrument. However, the State must prove that the defendant's commission of the offense was the direct cause of the harm. Because the State failed to prove that appellant's intoxicated driving caused the damage to the utility pole, we affirm the judgment of the court of appeals, which had deleted the restitution order.

---

[1] TEX. CODE CRIM. PROC. art. 42.037. Article 42.037(a) states, "In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense[.]" Article 42.037(b)(1) states, "If the offense results in damage to or loss or destruction of property of a victim of the offense, the court may order the defendant" to pay for the value of the property.

[2] *Hanna v. State*, 406 S.W.3d 670, 673-74 (Tex. App.–Amarillo 2013).

[3] The State's sole question for review asks the following:
When record evidence establishes a person's property damage or loss as a direct result of the defendant's commission of the offense of conviction, does the plain language of Article 42.037, Code of Criminal Procedure, authorizing restitution to "any victim of the offense," (1) limit eligibility for restitution only to persons actually named in the charging instrument, even when the existence of a victim is not an essential element of the offense of conviction, or otherwise required by offense-charging law, or (2) exclude whole categories of "victimless" offenses from consideration for restitution to persons damaged as a direct result of the criminal conduct?

## I.

Appellant was charged with the offense of driving while intoxicated. Before appellant entered his guilty plea, the trial judge held a restitution hearing, during which the prosecutor introduced a "damage repair invoice" that gave the total cost of repairing LP&L's pole. That was the only evidence the State introduced during this hearing, and appellant objected–during the prosecutor's closing arguments–that the State had failed to prove causation.

The trial judge then recessed the hearing to allow the prosecutor to introduce additional evidence. The evidence at the second hearing showed that, on January 17, 2012, Officer Joshua Franco was dispatched to a car crash. Officer Franco testified that, when he arrived at the scene, he noticed "power electricity lines all over the road" and "a vehicle that was crashed into a broken telephone pole." The officer testified that the driver–appellant–told him that he had gone to Sonic to get a hamburger,  and, while driving home, "he must have hit a water puddle which caused him to lose control crashing into the pole."  When asked whether he made any determination of what caused the accident, Officer Franco responded, "[Appellant] driving that vehicle."

During her closing argument, the prosecutor argued that she "proved the causation to the damage of the pole with Mr. Dana Hannah . . . in this case driving his vehicle."[4] Appellant said that Article 42.037 of the Code of Criminal Procedure limits payments of

[4] The State continued, "He hit the pole causing damage to that pole that the State proved on Friday. The amount of damage to the pole was over $7,000 to the victim, the victim being Lubbock Power and Light."

restitution to victims of the offense, and, because there was no victim in this case, the trial judge could not order restitution. Unpersuaded, the trial judge ordered appellant to pay full restitution for the pole.

On appeal, appellant argued that LP&L was not a victim of the offense for which he was convicted. The court of appeals agreed for two interrelated reasons. First, the court noted that the DWI statute "required neither injury to anyone nor the destruction or loss of anyone's property."[5] Therefore "LP&L was not a victim 'of the offense [DWI] for which [appellant] was convicted,' and the trial court erred in holding otherwise."[6] Second, although the court recognized that our decision in *Martin v. State*[7] left open the possibility of restitution to victims not named in the charging instrument, it held that such a possibility was very limited and allowed only in rare situations–such as when a defendant steals property from a husband and wife but the indictment lists only one of them as the complainant.[8] The court concluded:

> Again, the nature of the offense here does not encompass per se a particular category of complainant. No one need be injured or suffer loss for a D.W.I. to occur. Nor was the incident with the electrical pole or the identity of the pole's owner mentioned anywhere in the charging instrument or somehow alleged to be part of the offense charged. So, it cannot be said that LP&L was somehow

---

[5] *Hanna*, 406 S.W.3d at 672.

[6] *Id.*

[7] *Martin v. State*, 874 S.W.2d 674 (Tex. Crim. App. 1994).

[8] *Hanna,* 406 S.W.3d at 672-73.

a victim of the crime for which appellant was convicted.[9]

Because many DWI cases involve accidents with property damage and because the court of appeals adopted broad and seemingly *per se* rules, we granted review.

## II.

Restitution is not only a form of punishment, it is also a crime victim's statutory right.[10] Restitution serves multiple purposes, including restoring the victim to the status quo and forcing an offender to address and remedy the specific harm that he has caused.[11] "A broad interpretation of the restitution statutes provides judges with 'greater discretion in effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently compensating victims.'"[12] However, the legislature has also recognized limits on the right to restitution: the amount of restitution must be just; it must have a factual basis in the record; and it may be ordered only to a victim of an offense for which the defendant is charged.[13]

---

[9] *Id.* at 673-74.

[10] TEX. CODE CRIM. PROC. art. 42.037.

[11] Don Rogers*, Feature: The Crime Victim's Constitutional Right to Restitution in Texas Criminal Proceedings*, 46 HOUSTON LAWYER 18, January/February, 2009 ("restitution not only compensates the crime victim for actual loss in applicable cases, but also furthers the socially desirable goal of rehabilitation '[b]ecause it forces the defendant to confront, in concrete terms, the harm his actions have caused.'") (quoting *Kelly v. Robinson,* 479 U.S. 36, 49 n.10 (1986)).

[12] *Lemos v State*, 27 S.W.3d 42, 45 (Tex. App.–San Antonio 2000, pet. ref'd) (quoting Neil D. Okazkai*, People v. Sexton: Insuring an Absurd Result Through Inflexible Interpretation—The Court of Appeal Denies Criminal Restitution To a Victim's Insurance Company*, 31 LOY. L.A. L. REV. 297, 321 (1997)).

[13] *Campbell v. State*, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999) (one "limit on the authority of a trial court to order restitution is that a trial court may not order restitution to any but

This case poses the question of who is a "victim" for purposes of the Texas restitution statute. As in all cases involving statutory interpretation, we look first to the plain language of the statute. We do so in an effort to "effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."[14]

The Code of Criminal Procedure specifically states that it should be "liberally construed" to achieve the legislature's purpose–"[t]he prevention, suppression and punishment of crime."[15] The legislature intended restitution to "'adequately compensate the victim of the offense' in the course of punishing the criminal offender."[16] "Society is benefitted by punishment, including restitution, that is directly related to the offenses for which a defendant has been charged and convicted."[17] With these goals in mind, we turn to the restitution statute.

Article 42.037(a) states that a trial judge has discretion to order a defendant to make restitution "to any victim of the offense[.]"[18] Section (b)(1) covers "damage to or loss or

---

the victim or victims of the offense with which the offender is charged. Nor may a trial court, without the agreement of the defendant, order restitution to other victims unless their losses have been adjudicated.") (citations omitted).

[14] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[15] TEX. CODE CRIM. PROC. art. 1.26.

[16] *Cabla v. State*, 6 S.W.3d 543, 545 (Tex. Crim. App. 1999) (quoting TEX. CODE CRIM. PROC. art. 42.12, § 9(a)).

[17] *Id.* at 545-46.

[18] TEX. CODE CRIM. PROC. art. 42.037(a).

destruction of property of a victim of the offense[.]"[19]    Section (b)(2) applies when the offense "results in personal injury to a victim[.]"[20]    Section (k) provides, "The court shall resolve any dispute relating to the proper amount or type of restitution[,]" and that "[t]he standard of proof is a preponderance of the evidence."[21]    Section (k) also puts the burden to demonstrate "the amount of the loss sustained by a victim as a result of the offense" on the State, while defendant bears the burden to prove his financial resources and his needs, as well as the needs of any dependants.[22]    Section (m) states that a restitution order may be enforced like the judgment in a civil action.[23]

While Article 42.037 sets out a comprehensive restitution scheme, it leaves one important aspect vague: the statute does not define the term "victim."[24]    When interpreting

---

[19] *Id*., art. 42.037(b)(1). This restitution section lists several possible remedies, including returning the property or paying for its value. *Id.*

[20] *Id.*, art. 42.037(b)(2). The restitution remedies for personal injury include payment of "any expenses incurred by the victim as a result of the offense" or compensation to the victims of crime fund. *Id.*

[21] *Id*., art. 42.037(k).

[22] *Id*.

[23] *Id.*, art. 42.037(m).

[24] In Chapter 56, titled "Rights of Crime Victims," the term "victim" is defined in Article 56.01 and includes only victims of specified offenses or other offenses when the person "has suffered personal injury or death as a result of the criminal conduct of another." *Id.*, art. 56.01(2). That definition, however, is only for the purpose of Chapter 56. *Id.*, art. 56.01. Victims of theft or burglary, for example, are not covered by the term "victim" in Chapter 56, but they are entitled to restitution for their property losses. *See* art. 42.037(b)(1) (discussing restitution when "the offense results in damage to or loss or destruction of property of a victim of the offense"); *see e.g., Campbell v. State*, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999) (defendant convicted of theft could be ordered to pay $100,000 restitution to various named victims); *Long v. State*, 7 S.W.3d 316, 322-23

a statute, an undefined word or phrase should be construed and understood according to its common, every day usage.[25]  According to Black's Law Dictionary, a "victim" is a "person who is the object of a crime . . . ."[26]  But can there be a victim, for purposes of restitution, when the defendant is charged with a "victimless crime"?  And must a victim be named in the charging instrument? Texas law is unclear on both points.

## A.     "Victimless crimes" are not victimless if the offense caused someone harm.

We have never held that restitution is allowed only for penal offenses with statutorily-recognized victims.  But this Court has consistently held that there must be a causal connection between the criminal offense and the recipient of restitution.  For example, in *Gordon v. State,*[27] we deleted a restitution order for funeral expenses because the jury acquitted the defendant of murder, and therefore the defendant was not criminally responsible for the victim's death and the resulting funeral expenses.[28]  In *Martin,*[29] this Court again

---

(Tex. App.–Beaumont 1999, no pet.) (defendant convicted of theft of timber could be ordered to pay restitution of $105,488, which included the current market value and the costs of regrowing timber).

[25] TEX. GOV'T CODE § 311.011 (statutorily undefined words shall be "construed according to the rules of grammar and common usage"); *see Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012).

[26] BLACK'S LAW DICTIONARY 1405 (5th ed. 1979); *see also* WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY UNABRIDGED 2036 (2d ed. 1983) (defining "victim" as "someone or something killed, destroyed, injured, or otherwise harmed by, or suffering from, some act, condition, agency, or circumstance"; defining "victimless crime" as "a statutory crime, such as prostitution or gambling, regarded as having no clearly identifiable victim.").

[27] 707 S.W.2d 626 (Tex. Crim. App. 1986).

[28] *Id*. at 629 (defendant police officer convicted of civil-rights violation; noting that the only "fact" that the trial judge could have relied upon was that the defendant had pulled the arrestee's hair,

recognized that "restitution may not be ordered as a condition of probation for losses caused by an offense for which the defendant is not criminally responsible."[30]  And, in *Cabla v. State*,[31] we stated, in dicta, that "the focus of restitution orders  [is] limited to the individuals alleged and proven to be victims of the charged offense"[32] and that "the amount of a restitution order is limited to only the losses or expenses that the victim or victims suffered as a result of the offense for which the defendant was convicted."[33]  This particular language in *Cabla* could be interpreted as meaning either individuals "alleged in the indictment" or,

---

but that act was not the cause of the victim's death, which was caused by the blows he received from other officers). *See also Campbell v. State*, 5 S.W.3d 693, 698 (Tex. Crim. App. 1999) ("In *Gordon*, there was no factual basis in the record for the trial court's order of restitution for causing the victim's death. The trial court as a matter of law could not have imposed restitution based on conduct that had no basis in the record.").

[29] 874 S.W.2d 674 (Tex. Crim. App 1994).

[30] *Id*. at 677.  In *Martin*, the defendant was convicted of a defrauding a single victim. *Id.* at 675. This Court held that the defendant could not be ordered to pay restitution to other investors who were defrauded in separate, uncharged incidents. *Id.* at 677. Restitution was not proper because the defendant was never found guilty of the crime that allegedly caused the other investors' losses. *Id. See also Ex parte Lewis*, 892 S.W.2d 4 (Tex. Crim. App. 1994) (trial court erred in granting restitution to victims of other, uncharged burglary). Appellant argues that *Martin* prohibits restitution in this case because "the trial court's award of restitution to LP&L was outside the scope of the offense" and "the crime for which Appellant was charged and convicted has nothing to do with causing damage to a phone pole." Appellant's Brief at 11. But in the present case, appellant pled guilty to the DWI that the State argued caused the damage to the pole.

[31] 6 S.W.3d 543 (Tex. Crim. App. 1999).

[32] *Id.* at 546.

[33] *Id*. In *Cabla*, the issue was whether the defendant's previous bankruptcy proceeding discharged the trial court's restitution order.  We upheld the restitution order "because the evidence at trial established [defendant] committed a crime against the alleged victims and that he was ordered to pay restitution in the amount proven to have been unlawfully appropriated from those victims." *Id.* at 550.

more generally, individuals "alleged and proven to be victims of the criminal offense" at the restitution hearing. We believe that the latter interpretation is the correct one because later in *Cabla* we stated that "if a trial court . . . awards restitution to an individual *either* not named as a victim in the indictment *or* not shown to be a victim at trial, . . . [t]hen the restitution order may be attacked on those grounds."[34]

In support of its conclusion that restitution is not permissible when a criminal offense contains no statutory requirement of a complainant (*i.e.*, a victim), the court of appeals relied on two lower court opinions: *Bruni v. State*[35] and *Lemos v. State*.[36] In *Bruni,* a defendant was ordered to pay restitution to a theft victim's wife even though he, not his wife, was the named complainant. The court held that, although the victim's wife was not a named complainant, the record showed that the stolen money was jointly owned by the victim and his wife as community property, so the victim's wife was herself a victim.[37]

The court of appeals in this case read *Bruni* as permitting restitution because the wife, like the victim, "fell within the statutorily contemplated category of victims of theft."[38] But nothing in *Bruni* indicated that its holding hinged on "statutorily contemplated" victims. Rather, the *Bruni* court held that the victim's wife was also a victim because "[t]he record

---

[34] *Id.* at 549.

[35] 669 S.W.2d 829 (Tex. App.–Austin 1984, no pet.).

[36] 27 S.W.3d 42 (Tex. App.–San Antonio 2000, pet. ref.).

[37] *Bruni*, 699 S.W.2d at 836.

[38] *Hanna*, 406 S.W.3d at 673.

show[ed] that the $40,000 appropriated by Bruni was jointly owned by John and Betty Ross as husband and wife. . . . Perforce, both were victims."[39]  The result depended entirely on the evidence that the named victim's wife was also a victim and that the defendant's criminal conduct caused her loss, not that she was a "statutorily contemplated" victim.

In *Lemos*, the defendant was acquitted of murder, but convicted of aggravated robbery.  On appeal, he challenged a restitution order that required him to pay for therapy for the murder victim's family.[40]  The court held that the victim's family did not qualify for restitution because "'restitution is limited to the *results* of the offense or offenses charged, and that restitution must be made only to the *victim*[.]'"[41]  Thus, "restitution exists only for those direct victims of the offense for which the defendant was charged and convicted."[42]  However, the *Lemos* court equated that correct statement with an incorrect one: the victim's family could not recover because they were not "statutorily-recognized victim[s]."[43]

It was this language on which the court of appeals in the present case relied.[44]  However, as we have already noted, the restitution statute does not define "victim" nor does

---

[39] *Bruni*, 669 S.W.2d at 836.

[40] *Lemos*, 27 S.W.3d at 44-45.

[41] *Id*. at 48 (quoting *Gonzalez v. State*, 954 S.W.2d 98, 106 (Tex. App.—San Antonio 1997, no pet.)).

[42] *Id*. at 49.

[43] *Id*.

[44] *Hanna,* 406 S.W.3d at 673.

it require that restitution may be ordered only for those criminal offenses that foresee harm to a specific victim or complainant. Therefore, while we agree that restitution is limited to victims who have suffered harm to their person or property as a result of the offense, this does not mean that such restitution is limited to a "statutorily-recognized" victim.

Instead, we hold that, for purposes of the restitution statute, a "victim" is any person who suffered loss as a direct result of the criminal offense. As stated in Section 42.037(k), "[t]he burden of demonstrating the amount of the loss sustained by a victim *as a result of the offense* is on the prosecuting attorney."[45] The phrase "as a result of the offense" includes the notion of both actual and proximate causation.[46] As the State acknowledges, the damage must be a "direct" result of the defendant's criminal offense–that is, the State must prove, by a preponderance of the evidence, that the loss was a "but for" result of the criminal offense and resulted "proximately," or foreseeably, from the criminal offense.[47]

---

[45] TEX. CODE. CRIM. PROC. art. 42.037(k) (emphasis added).

[46] The federal Mandatory Victims Restitution Act defines a victim as "a person directly and proximately harmed as a result of the commission of an offense[.]" 18 U.S.C. § 3663A (2).

[47] In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court recognized a similar standard in its interpretation of the federal Victim and Witness Protection Act (VWPA). However, instead of holding that the harm must be caused by "the offense," the Supreme Court held that under the VWPA restitution "is intended to compensate victims only for losses caused by *the conduct underlying* the offense of conviction." *Id.* at 416. We use different language to avoid what would be an incorrect interpretation, that restitution is allowed for any harm caused by the *actus reus* of an offense. In *Hughey*, the Supreme Court held that a defendant could not be ordered to pay restitution for the fraudulent use of multiple credit cards when he was convicted of the fraudulent use of only a single victim's credit card. *Id.* at 422. In so holding, the Court recognized that the statute did not "reflect congressional intent to include in the restitution calculus losses beyond those caused by the offense of conviction." *Id.* at 416.

This standard is similar to that used in many other jurisdictions.[48] In addition, public policy supports allowing restitution to victims of purportedly "victimless" crimes. Allowing restitution in such cases provides victims with a single forum in which they may recover actual damages, albeit only those caused as a direct result of the offense. Prohibiting restitution in such cases would severely limit a victim's ability to be made whole if that person did not have the financial resources to hire an attorney and pursue a civil lawsuit. This is not to say that a restitution proceeding could, or should, replace civil actions.[49] But

---

[48] *See Pena v. State*, 664 P.2d 169, 178 (Alaska Ct. App. 1983) (defendant convicted of manslaughter ordered to pay restitution to decedent's surviving passenger because "property damages and injuries directly sustained by [the passenger] were unquestionably the consequence of precisely the same conduct and intent on [the defendant's] part"); *State v. Lewis*, 214 P.3d 409, 412-13 (Ariz. Ct. App. 2009) ("[E]ven a 'victimless' crime may support a restitution award when the criminal conduct directly caused the economic damage. Rather than the elements of the crime, 'the facts underlying the conviction determine whether there are victims of a specific crime.'") (citation omitted); *State v. Wilkinson,* 39 P.3d 1131, 1133 (Ariz. 2002) (defendant who misrepresented himself as a licensed contractor must pay restitution for the salary he received, because it was a direct result of misrepresenting self, but not for shoddy work, which was an indirect result); *State v. Guadagni*, 178 P.3d 473, 477-79 (Ariz. Ct. App. 2008) (defendant ordered to pay restitution to wives who suffered economic losses as a direct result of bigamy because, although bigamy may occasionally be victimless, "the elements of a crime do not alone determine whether a particular person is entitled to restitution"); *State v. Mai*, 572 N.W.2d 168, 171 (Iowa Ct. App. 1997) (State must prove "by a preponderance of the evidence a causal connection exists between the criminal act and the victim's damages"); *State v. McBride*, 940 P.2d 539, 543-44 (Utah Ct. App. 1997) (applying "modified 'but for' test" in rejecting defendant's argument that police negligence was not superseding cause of victim's loss); *United States v. Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997) ("Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss.").

[49] Restitution "is not awardable for pain and suffering or the inconvenience the offense may have caused the victim." 43A GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 46.136 (3d ed. 2011). *See also* TEX. CODE CRIM. PROC. art. 42.037(f)(2) ("Any amount recovered by a victim from a person ordered to pay restitution in a federal or state civil proceeding is reduced by any amount previously paid to the victim by the person under an order of restitution.").

when the legislature specifically provides a procedural mechanism for compensating the victims of crime, that mechanism should not be unnecessarily or artificially limited.

Furthermore, allowing restitution in DWI cases is consistent with public policy concerns specific to DWI laws.  Although the court of appeals correctly noted that the offense of DWI does not *require* a victim, the whole purpose of criminalizing driving while intoxicated is to prevent "[t]he carnage caused by drunk drivers"[50]–fatalities, serious injuries and property damage.[51]  Furthermore, judicially enacting a flat prohibition against restitution in DWI cases could have deleterious effects, such as giving prosecutors an incentive to charge DWI defendants with additional counts of intoxication assault or criminal mischief solely to preserve the right to request restitution for an accident victim.  Therefore, we conclude that restitution may be ordered, when appropriate, in DWI cases.[52]

---

[50] *South Dakota v. Neville*, 459 U.S. 553, 558 (1983) ("The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here.").

[51] *See Blackburn v. State*, 204 S.W.2d 619, 620 (Tex. Crim. App. 1947) ("The purpose of the law is to protect people against drunk drivers while using such public road, street or thoroughfare."). According to the National Highway Traffic Safety Administration,

> Alcohol is a factor in 26% of the United States' crash costs. Alcohol-related crashes in the United States cost the public an estimated $114.3 billion in 2000, including $51.1 billion in monetary costs and an estimated $63.2 billion in quality of life losses. . . . People other than the drinking driver paid $71.6 billion of the alcohol-related crash bill. . . . Alcohol-related crashes accounted for an estimated 18% of the $103 billion in U.S. auto insurance payments.

Dexter Taylor, Ted Miller & Kenya Cox, *Impaired Driving in the United States Cost Fact Sheet*, National Highway Traffic Safety Administration, 2002, *available at* http://www.nhtsa.gov/people/injury/alcohol/impaired_driving_pg2/US.htm.

[52] Other Texas courts of appeals have ordered restitution in DWI cases when appropriate. *See, e.g., Ruiz v. State*, No. 14-04-01140-CR, 2006 WL 771381, *1-2 (Tex. App.–Houston [14th

**B.    A victim need not be named in the charging instrument.**

There is nothing in the Code of Criminal Procedure requiring, as a prerequisite for a restitution order, that a victim be alleged in the charging instrument. Indeed, the restitution statute explicitly states that a defendant may be ordered to make restitution to "*any* victim of the offense."[53] If the legislature intended that restitution could be ordered only for "the named victim of the offense" or "the complainant of the offense" it surely would have said so. Even the phrases "the victim" or "a victim" are more restrictive than the expansive phrase "any victim." When the legislature uses the word "any," it usually means "any and all." Furthermore, we have never held that, to be entitled to restitution, a victim must be named in the charging instrument. In fact, we indicated quite the opposite in *Martin v. State,*[54] when we noted that

> [n]amed complainants will generally be the only victims of the crime
> adjudicated because in the majority of cases the offense is alleged in terms of
> an identified victim or complainant. However, we make this distinction

Dist.] March 28, 2006, no pet.) (not designated for publication) (upholding DWI defendant's restitution order to pay for "replacement structure" for the house destroyed by his intoxicated driving); *Banda v. State*, No. 13-97-400-CR, 1998 WL 34202281, *1-2 (Tex. App.–Corpus Christi June 11, 1998, no pet.) (trial judge could recommend that parole board order DWI defendant to pay restitution to accident victim for property damage caused by his driving while intoxicated).

   Appellant raises a valid countervailing public-policy concern that, if we allow restitution for DWI damages, we open the floodgates for restitution in a wide swath of "victimless" offenses– perhaps even thousands of dollars worth of restitution for accidents caused by Class C jaywalking offenses. We leave those legitimate concerns to another day as DWI, unlike many other "victimless" offenses, clearly has the purpose of preventing and deterring death and damages to persons and property by intoxicated drivers on our highways.

   [53] TEX. CODE CRIM. PROC. art. 42.037(a) (emphasis added).

   [54] 874 S.W.2d 674 (Tex. Crim. App. 1994).

because we recognize that the named complainant may not always be the only victim of the crime adjudicated.[55]

There is no requirement that a restitution victim be alleged in the indictment. Holding otherwise would allow for bizarre circumstances that could not have been the intent of the legislature. Imagine that Dangerous Dan breaks into Suzie Q's house and steals Suzie's computer and her houseguest's Rolex watch. Is the trial judge forbidden from ordering restitution for the houseguest simply because she is not the complainant named in the burglary indictment? This cannot be the case. It is more logical and just to conclude that the houseguest is entitled to restitution if the State proves, by a preponderance of the evidence, that she is also a victim–that the burglary was the "but for" and proximate cause of the loss of her Rolex.

In sum, we conclude that a person who suffers property damage or personal injuries as the direct result of a defendant's DWI crime may be entitled to restitution even though that victim is not named in the DWI charging instrument.

## III.

Although we reject some of the reasoning of the court of appeals, we nonetheless affirm its holding that the $7,767.88 restitution order was improper. The State offered evidence that appellant caused the damage to the utility pole, but there is no evidence–and certainly not proof that satisfies the preponderance of the evidence standard–to show that the

---

[55] *Id*. at 676 n. 4 (citations omitted). *See also id.* at 678 n. 9 (discussing *Bruni v. State*, 669 S.W.2d 829 (Tex. App.–Austin 1984, no pet.) and noting that "even though Betty Ross was not a named complainant, she was clearly a victim of the crime adjudicated.").

*offense* (appellant's intoxicated driving) caused the damage to the utility pole. The only evidence as to what caused the accident (and the resulting damage) was appellant's statement that "he must have hit a water puddle which caused him to lose control crashing into the pole." The trial judge did not have to believe appellant's testimony concerning the cause of the accident, but there is no other affirmative evidence that would support a finding that appellant's *intoxicated* driving caused the accident.[56]

In this case, appellant pled guilty, so there was no trial testimony concerning his driving, the accident, or his intoxication. At the end of the first restitution hearing in which the State proved only the amount of the damage to the utility pole, appellant objected because "[t]here's been no evidence of causation." When the trial judge asked if the State needed a recess, appellant again objected, saying, "The State has had plenty of time to prepare this. This is the third time we've been here. They didn't present evidence as to causation." Nonetheless, the trial judge recessed the restitution hearing for several days to allow the State an opportunity to prove causation.

At that second hearing, Officer Franco testified that he responded to a dispatch call for "a car crash with injuries." When he arrived, he saw a car "that was crashed into a

---

[56] *See, e.g., Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (holding that defendant is not entitled to a jury instruction on a lesser included offense based on mere speculation; "it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense."); *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (trial court erred in submitting instruction on lesser-included offense of sexual assault because the failure to find or retrieve a knife matching the description given by the complainant is not "affirmative evidence" that no knife was used during the assault).

broken telephone pole" and "power electricity lines all over the road." The pole was broken in half. Appellant, the driver of that car, told Officer Franco that he hit a water puddle and lost control of his car. Officer Franco never mentioned anything about appellant being intoxicated, smelling of alcohol, or exhibiting any other indicia of drunkenness. He never mentioned the word alcohol or drink or drunk. He did not describe appellant's condition or demeanor. When the prosecutor asked if Officer Franco had made a determination as to what caused that accident, Officer Franco said, "Mr. Hanna[] driving that vehicle." Period. We cannot simply assume, without any evidence, that Officer Franco thought appellant was intoxicated or that this assumed intoxication caused the accident.

People frequently have car accidents regardless of whether they are intoxicated. To obtain restitution, the State must prove that appellant's intoxicated driving was the "but for" and proximate cause of the damage. Although the State was given ample opportunity to offer evidence that it was appellant's intoxicated driving that caused the accident, there was no such proof in this case.[57]

---

[57] Although appellant pled guilty to being intoxicated, he explicitly denied that his intoxication was the cause of the accident. At any rate, proof of the defendant's intoxication is not equivalent to proof of causation. For example, other intoxication offenses such as intoxication assault and intoxication manslaughter require proof that it was the intoxicated driving that caused the victim's injuries, not merely that the defendant was driving (while intoxicated) and that a person had been injured by the defendant's driving. *See* TEX. PEN. CODE § 49.07 (a person commits intoxication assault "if the person, by accident or mistake . . . while operating a motor vehicle in a public place while intoxicated, *by reason of that intoxication* causes serious bodily injury to another.") (emphasis added); TEX. PEN. CODE § 49.08 (a person is guilty of intoxicated manslaughter if he "operates a motor vehicle in a public place . . . and is intoxicated and *by reason of that intoxication* causes the death of another by accident or mistake.") (emphasis added). *See also Martinez v. State,* 66 S.W.3d 467, 469 (Tex. App.–Houston [1st Dist.] 2001, pet. ref'd) (sufficient

Therefore, we affirm the judgment of the court of appeals.

Delivered: April 9, 2014
Publish

---

evidence for jury to find "that appellant caused the deaths of the four victims by reason of his intoxication."); *Rodriguez v. State,* 191 S.W.3d 428, 438 (Tex. App.–Corpus Christi 2006, pet. ref'd) ("[J]ury could rationally conclude that appellant was intoxicated and that the accident was caused by that intoxication."); *Wooten v. State*, 267 S.W.3d 289, 295 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) ("[A] fact-finder reasonably could have found that "but for" appellant's intoxication, the complainants' deaths would not have occurred"). Although in *Kuciemba v. State,* S.W.3d 460, 462 (Tex. Crim. App. 2010) we stated that "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident . . .," *Kuciemba* had nothing to do with whether the evidence was sufficient to prove that the defendant's intoxicated driving caused the accident. Instead, in *Kuciemba* we held that the fact that a defendant was intoxicated at the scene of an accident, paired with evidence that the accident had occurred recently, was sufficient evidence that the defendant was intoxicated at the earlier time when he was driving the vehicle. *Id*. at 463.